## CHARTER OF MANCHESTER.

Constitutional law. Check lists, who may post up and revise the same.

An act in amendment of the charter of the city of Manchester provided that the board of assessors for said city shall hereafter be, for the purposes of said act, a board of inspectors of the check lists in the several wards of said city, who shall prepare, revise, correct and put up, in the manner that selectmen of towns are required to do, alphabetical lists of the voters in said city, &c. *Held*, that these provisions of the act are not repugnant to the constitution of this State.

SARGENT, J.   Section 8 of an act of the New Hampshire legislature, passed June, 1867, and entitled an act in amendment of the charter of the city of Manchester, provides that this act shall take effect whenever His Excellency the Governor shall declare by his proclamation that the Supreme Judicial Court shall have pronounced the same to be in conformity to the constitution of this State; the opinion of the Supreme Judicial Court to be published in the next volume of the New Hampshire Reports after its delivery. Whereupon all acts and parts of acts inconsistent with its provisions were to be repealed.

The act we are called upon to consider provides that the board of assessors, for the city of Manchester, shall hereafter be, for the purposes of this act, a board of inspectors of the check lists in the several wards in said city, and that they shall prepare, revise, correct and put up, in the manner that selectmen of towns are required to do, an alphabetical list of the legal voters in each ward in the city, and shall deliver an attested copy of such lists so prepared and corrected, to the clerks of the

respective wards, before the opening of the polls for elections in said wards, and said ward clerks are required to use said lists and no others at the elections. These are the leading features of the bill. Some of the details we may allude to as we proceed.

What are the provisions of our constitution bearing on this subject?

Article 5 part 2 of the constitution of our State provides that the legislature shall have "power to make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions and instructions, either with penalties or without, so as the same be not repugnant or contrary to this constitution, as they may judge for the benefit and welfare of this State, and for the governing and ordering thereof and of the subjects of the same, for the necessary support and defence of the government thereof."

It will not be questioned, that, in a free government, many orders, laws and directions, regulating the right of suffrage and the manner of its exercise, and protecting the citizens against any violation of these rights either by force or fraud, are necessary, and all such laws and regulations the legislature have full powers to make, and not only so, but the legislature is made the sole judge of the necessity and expediency of such laws and regulations. The only limit to the power thus conferred upon our legislature is that the laws and regulations be not repugnant or contrary to the constitution.

Part 2d of the constitution, article 28, provides that every male inhabitant with certain qualifications and exceptions, shall have a right to vote for senator, &c., in the town or parish in which he dwells.

Article 30 provides that every person qualified as the constitution provides, shall be considered an inhabitant, &c., in the town, parish, or plantation where he dwelleth and hath his home.

Article 31 provides that the inhabitants of unincorporated places, required to pay taxes, may vote for senator, &c., and that the assessors shall have like authority for notifying the electors and collecting and returning the votes, as the selectmen and town clerks have in the several towns.

Article 32 provides that the meetings in towns for choice of goverer, council and senators, shall be warned by a warrant from the selectmen, and governed by a moderator, who shall receive, sort, count and declare the vote, &c., and the town clerk shall make a record, &c., and transmit copies of the votes to the sheriff of the county, &c.

These are all the provisions we find in our constitution bearing upon this subject. Nothing is said in it about check lists, or their regulation or correction. The whole matter of check lists is a statute regulation; they were first required by the act of June 23, 1813, which provided that alphabetical lists of voters should be posted up in towns, and that the selectmen furnish ballot boxes for the use of the towns, and providing how the ballots should be cast and received, and how the name of the voter should be checked on the list. N. H. Laws, (1815) 251.

If any constitutional objection were to be made to this provision of the statute we are considering, it would seem to be more applicable to the law itself requiring check lists, and that the names of all voters

must be placed thereon, or not be allowed to vote, than to the manner of their regulation, and more especially to its being regulated and corrected by one class of officers rather than another, where they were both to be governed by the same rule in the discharge of the same duties.

But we have held that such laws as these, and that requiring a certain term of residence in the town before the person shall be considered as dwelling and having his home there, are not in conflict with the constitutional provision, but necessary and proper regulations of the manner of its use, which the legislature may from time to time make and change. *Davis* v. *School District*, 44 N. H. 398, 404.

On page 406 of that opinion the power of the legislature to prescribe check lists is put upon the same ground as the power to prescribe a certain term of residence in a place, in order to entitle the person to vote. If it is constitutional to have check lists at all, and to require that the voter shall furnish his evidence of his right to any proper tribunal in a given time and way, in order to have the right to vote, then it would seem to be clearly within the power of the legislature to provide whether these check lists shall be put up and corrected by the selectmen or assessors, or by any other board of officers, which they may choose to select. We think, therefore, that there is no constitutional objection on the ground that the legislature have committed those duties to assessors instead of to selectmen.

But it may be said that the rule should be uniform, and administered alike in all places. There might be more weight in this objection if all the other attendant circumstances were the same. We by no means intimate an opinion that the legislature might not constitutionally impose these duties relative to the check list, upon one set of officers in some towns and counties, and upon a different board in other towns and counties. The legislature may constitutionally pass a general law in relation to a particular place. *Scott* v. *Wilson*, 3 N. H. 321, 328; *State* v. *Noyes*, 30 N. H. 279. So general statutes have been passed in regard to schools in Portsmouth and in Somersworth, differing widely from the general law relating to schools in other parts of the State. Chaps. 80 and 81, Comp. Laws.

But when we consider the difference between the wards of a city and towns not connected with any city, we see at once that there is such a difference in circumstances as may well justify a difference in the board selected to perform these duties, if such a justification were necessary.

Cities are not provided for or mentioned in the constitution. But we cannot doubt that the legislature have the power and the right constitutionally to grant charters for cities, and the practice has been in this State to authorize them to divide themselves into wards, and to these wards are granted certain powers of ordinary towns, while other powers of towns are reserved from the nature of the case or from necessity to the whole city. By the charter of the city of Manchester as amended, there are eight wards, each of which, for certain purposes, is allowed the powers and privileges of towns, and for other purposes they each constitute a part of the city, all of which, for some purposes, constitutes but a single town.

There is one mayor, one city clerk, one common council, one board of school committee, one board of overseers of the poor, of which the mayor is chairman, one board of police, one collector of taxes, and by this act, one board of inspectors of check lists for the whole city, while each ward has a ward clerk, a moderator, and selectmen, while each ward elects one assessor, and all these assessors act as a joint board for the whole city.    This subdivision of powers has been changed and modified several times by amendment of the charter.    The wards have been granted greater powers by some of these amendments than they had by the original charter.    But such powers as were thus conferred by the legislature, may, by the same power, be taken away and vested in the city.

The original charter was granted in 1846.    By this charter the mayor and aldermen were to "prepare, revise, correct and put up the lists of voters in each ward of the city."    No question was raised, that we are aware of, as to the constitutionality of this provision.    In 1848, by an amendment, this duty was imposed upon the officers designated as ward selectmen.    Any of these changes may be made by the legislature; they may enact that the wards shall be towns for certain purposes, or they may re-enact that the city shall be the town for the same purposes, and it is all well enough under the constitution, so long as all the rights of the citizen and of the voter are retained and secured to him.    This can as well be done by having one board of inspectors of check lists as several; by having that duty performed by the city as a town for the whole, as by the officers of the wards for each as a town.

This act provides that the board of inspectors of the check lists shall meet on three days, excluding Sunday, previous to town meeting, both forenoon and afternoon, and also in the evening if necessary, to hear evidence and correct the check lists, and the board are also to be in session on the day of the meeting from seven to eleven o'clock A. M., and from one to three P. M., for the purpose of correcting mistakes, and certifying the same to the several ward moderators, who shall receive the vote so omitted, and the ward clerk shall make record thereof on the back of said lists.

The act also provides that the name of the voter shall be inserted on said list, and also the name of the street and the number of the dwelling, or if not numbered, then such other description as shall indicate the residence of the voter.    This is simply for the purpose of identification and the prevention of fraudulent voting.    In ordinary towns this could not be done, and would be useless if done, but in a large city it might not only be easily done, but very necessary to prevent fraud, and if the legislature see fit to require this in cities and not in towns, the difference in the circumstances might be a sufficient reason, and we see no constitutional objection.

This act provides that the list of names shall be posted up just as before.    In towns a copy of the list is to be filed with the town clerk fifteen days before the meeting, while by this act the copy is to be delivered to the ward clerks before the opening of the polls for election.    In towns the check list as corrected, with the names added to it or erased

from it, is the one to be used at the election, and that is the same under this law, except that a copy is furnished to the ward clerks, while the inspectors keep the original.   When the copy is furnished to the town clerks fifteen days before the election, it is not required that this copy should be corrected or used at the election.   It is only a copy of the list as first posted up, and is not a sure guide after the list has been corrected, nor can it afford much information of the state of the list after corrections have been made.   But under this law the inspectors are to prepare, revise, correct and put up, in the manner the selectmen of towns are required to do, an alphabetical list of the legal voters in each ward, which lists are to be corrected and revised, and an attested copy of the same, as corrected, is to be delivered to the ward clerks before the opening of the polls in each ward.   We cannot see that the rights of the voter are in any way affected by any change in this particular, and while this object is secured, we think that these matters of detail may safely be left to legislative control.

Our opinion is that this act in amendment of the charter of the city of Manchester is free from constitutional objection, and we have certified to His Excellency the Governor, our unanimous opinion signed by all the members of the court, that said act is in conformity to the constitution of this State.